IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**BRYAN M. BAUDEAN,**

    **Plaintiff,**

v.                                                          Civil Action No. 3:14cv685

**PEARSON EDUCATION, INC.,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Dismiss filed by Defendant Pearson Education, Inc. ("Pearson"). (ECF No. 7.) Plaintiff Bryan M. Baudean responded, and Pearson replied. (ECF Nos. 10–11.) This matter is now ripe for disposition. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[1] and 1367.[2] For the reasons that follow, the Court grants Pearson's Motion to Dismiss Counts III–V.

---

[1] Section 1331 defines federal question jurisdiction as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[2] Section 1367 provides for supplemental jurisdiction and states in pertinent part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

## I. Standard of Review

"A motion to dismiss under Rule 12(b)(6)[3] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*,

---

[3] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Baudean attached to his Complaint a portion of Pearson's Policy Manual ("Policy Manual") and a July 18, 2013 email ("July 2013 Email") from Pearson's Chief Executive Officer, John Fallon, to Pearson employees. (Compl. Ex. A ("Policy Manual"), ECF No. 1-1; *id.* Ex. B ("July 2013 Email"), ECF No. 1-2.) Pearson attached Baudean's Equal Employment Opportunity Commission Charge of Discrimination ("EEOC Discrimination Charge") to its Memorandum in Support of Motion to Dismiss. (Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem. Supp.") Ex. 1 ("EEOC Discrim. Charge"), ECF No. 8-1.) The Court will consider the Policy Manual,[4] the

---

[4] The Court looks to this Policy Manual in order to view Baudean's Complaint favorably and only because its authenticity is uncontested. The Court notes that this document lacks a date tying it to Baudean's term of employment, meaning that the Policy Manual would require deeper scrutiny of both its authenticity and relevance absent the favorable lens through which the Court currently views Baudean's pleadings.

Discrimination Charge, and the July 2013 Email[5] because the documents are central to the claims, sufficiently referred to in the Complaint, and neither party contests their authenticity. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

## II. Procedural and Factual Background

### A. Procedural History

In this five-count Complaint, Baudean alleges that Pearson unlawfully discriminated against him because of his age (57), in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*,[6] and sex (male), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*[7] Baudean contends that the discrimination occurred when Pearson terminated his employment and replaced him with younger, female employees, including Nancy Baudean, his wife. Count I charges wrongful termination based on sex and "harassment" in violation of Title VII. Count II charges wrongful termination because of age and "harassment" in violation of the ADEA. Pearson has moved to dismiss the harassment aspect of those two claims. Baudean concedes that he does not pursue a harassment or hostile

---

[5] The July 2013 Email contains no pagination. For ease of reference, the Court employs the page numbers assigned by the CM/ECF docketing system.

[6] The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

[7] Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1).

4

work environment theory in Counts I or II,[8] so the Court denies Pearson's motion as to those claims as moot.

Baudean brings three remaining counts under state law: Count III alleges intentional infliction of emotional distress ("IIED"); Count IV claims wrongful termination on grounds of breach of an implied contract; and, Count V alleges a breach of contract. These state law counts are subject to the discretionary exercise of this Court's supplemental jurisdiction.[9] 28 U.S.C. § 1367(a). Virginia law applies to these claims. *See infra* Parts III.A, III.A.1, and III.A.3.

Baudean seeks $5 million dollars in compensatory, liquidated, and/or punitive damages, front pay, back pay, costs, and attorneys' fees. These damages stem, in part, from being replaced by his "younger, unqualified wife." (Compl. ¶¶ 76–78.) Baudean claims among other harms, loss of consortium. Baudean alleges that he has suffered "marital tension, and tension within the family."[10] (Pl.'s Opp'n Def.'s Mot. Dismiss ("Opp'n") 5, ECF No. 10.) Pearson seeks to dismiss Counts III–V, Baudean's three state law claims.

---

[8] During the March 30, 2015 initial pretrial conference, Baudean, by counsel, conceded on the record that he does not raise any claims for a hostile work environment or harassment. Pearson does not challenge Counts I and II to the extent they raise employment discrimination claims for wrongful termination under Title VII and the ADEA. Those two claims persist.

[9] "'Supplemental jurisdiction . . . allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims.'" *LaGrant v. U.S. Bank Nat'l Ass'n*, No. 3:14cv809, 2015 WL 1208967, at *5 (E.D. Va. Mar. 16, 2015) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995)). Because Baudean's Title VII and ADEA discrimination claims persist, and because the three state law claims arise from the same case or controversy outlined in the two federal counts, the Court will review the pending motion to dismiss the three state law claims under its supplemental jurisdiction powers.

[10] Baudean is represented by his daughter Cassie Lynn Baudean, Esquire. During the March 30, 2015 initial pretrial conference, the Court ordered Ms. Baudean to file a statement on the record indicating that she conferred with the Virginia State Bar regarding any potential conflicts. (ECF No. 15.) Ms. Baudean complied with the letter of the Order by filing a document certifying that she "conferred with the Virginia State Bar Ethics Counsel regarding any

B.      **<u>Summary of Allegations in the Complaint</u>**[11]

In October 2009, Baudean began working for Pearson[12] as a Custom Media Editor. From October 2009 until approximately October 9, 2013, Pearson employed Nancy Baudean as a Custom Acquisitions Editor and Managing Editor. Baudean alleges that his job did not change from October 2009 until October 31, 2013, despite changing his job title three times.

During his employment, Baudean obtained positive performance reviews and had no disciplinary history. He received "recommendations and public praise from co-workers and supervisors"[13] and, in 2012, received an award for being the top performer in his position nationwide. (Compl. ¶¶ 12–13.) However, Baudean observed "favoritism displayed towards the young female professionals by individuals in supervisory roles within the [sic] Pearson," including "disciplining older employees for low sales numbers while failing to disciple [sic] younger employees for equally low sales numbers." (*Id.* ¶ 18.)

In approximately June 2013, Eric Severson became Pearson's Vice President. His duties included supervising Baudean. On or about July 18, 2013, Pearson announced a plan to

---

conflict of interest in her representation of Plaintiff . . . in this matter." (ECF No. 19.) This filing begs the question of whether a conflict does not exist or, perhaps, exists and has been waived.
   To the extent the Plaintiff alleges damages stemming from "family tension," however, the Court continues to express disquietude that a lawyer within the family may be presenting evidence as to "family tension." *See* Va. Rules Prof'l Conduct R. 3.7(a) (subject to three exceptions, "[a] lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness").

[11] For purposes of the motion to dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Plaintiff. *Matkari*, 7 F.3d at 1134.

[12] Pearson "conducts business from [the] home offices of their [sic] employees" "throughout the United States." (Compl. 2.) The Complaint does not further describe Pearson's business.

[13] This public praise included four recommendations from three Pearson executives and one supervisor on the professional networking website LinkedIn.

6

reorganize its business. On July 18, 2013, Pearson CEO John Fallon sent Pearson employees the July 2013 Email about the reorganization. Among other things, the July 2013 Email informs employees that "where roles in the new organisation are the same or broadly the same as they are today, we won't ask anyone to apply for their own jobs." (July 2013 Email 3.) The July 2013 Email further indicates "some talented and valued colleagues . . . won't, by the end of this year, have roles in Pearson." (*Id.*) Baudean contends that "Pearson's company handbook states . . . that Pearson may waive at-will employment by a separate written document signed by the CEO." (Compl. ¶ 21.) Baudean contends that the July 2013 Email is a written document that waives at-will employment when read together with the Policy Manual.

As of July 18, 2013, Pearson employed Baudean as a Learning Solutions Specialist. On October 9, 2013, Pearson changed the title of Baudean's position to Learning Solutions Consultant but did not alter his position or duties. That same day, Pearson notified Baudean, then 57 years old,[14] that his employment would be terminated effective October 31, 2013 as a result of the elimination of his job. Pearson notified Baudean's wife, Nancy Baudean, that she would assume the role of Learning Solutions Consultant. Baudean contends that Pearson did not eliminate his position and that the Learning Solutions Specialist and Learning Solutions Consultant positions are the same.

Baudean asserts that Pearson terminated his employment despite his qualifications and willingness to continue working, and in his place, hired four women, all younger than Baudean and three younger than 40. Baudean contends that none of the four women, including his wife Nancy Baudean, were qualified for the position. As a result of Pearson's actions, Baudean avers that he

---

[14] The Complaint indicates Baudean was 57 years old at the time of his termination, but Baudean's Discrimination Charge suggests he was 58. (*Compare* Compl. ¶ 24, *with* Discrim. Charge 1.) A one year difference has no material effect on this Court's analysis.

"has been publicly humiliated, demeaned and embarrassed," "has withdrawn from his normal social events and leisure activities," "has been unable to sleep on a regular basis," and "has suffered extreme mental anguish, anxiety, loss of consortium and depression." (Compl. ¶¶ 37–40.)

Baudean filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging "sex" and "age" discrimination that occurred on "October 31, 2013." (EEOC Discrim. Charge 1.) Baudean's Discrimination Charge reflects that "[d]espite [his] superb performance, [he] was discharged and replaced by less experienced, less qualified[,] and younger female employee(s)." (*Id.*) "[Baudean] believe[s] [he] was discharged because of [his] age, 58[,] and sex, male, in violation of the [ADEA and Title VII]." (*Id.*) Baudean subsequently received a right to sue letter.

### III. Analysis

The Court first addresses the claims in Count III (IIED, a tort) and Count V (breach of contract) because these counts raise conventional causes of action. The Court will address Count IV separately because it appears to allege a hybrid claim of both tort (wrongful termination) and contract (breach of implied contract).

#### A. Counts III and V Fail to Survive Rule 12(b)(6) Scrutiny and Will Be Dismissed

For the reasons articulated below, Baudean's IIED and breach of contract counts do not survive Rule 12(b)(6) scrutiny. The Court first explains why Virginia law governs these claims. The Court then evaluates whether, under Virginia law, these counts survive Pearson's motion to dismiss.

Baudean asserts, without explanation, that New Jersey law governs the state law claims he brings to the Court. He is mistaken. A federal court exercising supplemental jurisdiction applies

8

the choice of law rules of the forum state, in this case, Virginia. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). As stated below, under Virginia's choice of law rules, Virginia law governs Baudean's state law claims brought under conventional causes of action: IIED (Count III), and breach of contract (Count V).

### 1. Virginia Law Governs Baudean's Tort Claim of IIED

Count III alleges IIED, a tort. Generally, when a cause of action arises in tort, "Virginia applies the law of the state where the tortious conduct or injury occurred." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993)). As to Count III, Baudean's employment and his injuries occurred in Virginia. As such, Virginia law applies to the tort of IIED alleged in Count III.

### 2. The Complaint Lacks Plausible Factual Allegations of Sufficiently Outrageous and Severe Conduct to Support a Claim for Intentional Infliction of Emotional Distress

The Complaint fails to allege plausible facts that the employer's conduct was sufficiently outrageous and severe to sustain his IIED claim. Therefore, the Court dismisses Count III.

Baudean fails to plausibly allege the second element of an intentional infliction of emotional distress claim,[15] namely, that the wrongdoer's "conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Womack*, 210 S.E.2d at 148 (reinstating a jury verdict in favor of plaintiff whose photo had been fraudulently

---

[15] To state a claim for intentional infliction of emotional distress under Virginia law, a plaintiff must plausibly allege: (1) "the wrongdoer's conduct was intentional or reckless[;]" (2) "the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality[;]" (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress[;]" and, (4) "the emotional distress was severe." *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). Because of the "risks inherent in torts where injury to the mind or emotions is claimed," Virginia law does not favor the tort of intentional infliction of emotional distress. *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) (citation omitted) (internal quotation marks omitted).

taken for identification in a child molestation case involving a co-worker only because plaintiff worked with the actual offender). "The outrageousness requirement 'is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved.'" *Harris*, 624 S.E.2d at 33 (quoting *Womack*, 210 S.E.2d at 148). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (citation omitted) (internal quotation marks omitted). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." *Womack*, 210 S.E.2d at 148 (citation omitted) (internal quotation marks omitted).

The conduct Baudean contends Pearson engaged in, terminating his employment due to his sex and age and "replac[ing] him with his younger, unqualified wife," (Compl. ¶ 76), "cannot be labeled the sort of rare offense that is so 'atrocious' that it '[goes] beyond all possible bounds of decency' and is 'utterly intolerable in a civilized society.'"[16] *Burke*, 55 F. Supp. 2d at 441 (alteration in original) (quoting *Russo*, 400 S.E.2d at 162) (finding that "insidious and

---

[16] The Complaint contains several statements reportedly made by Pearson personnel regarding Pearson's discriminatory animus towards males and older individuals, including: (1) that Pearson Vice President Eric Severson "like[d] to hire the 'hot young cheerleader types'" and "'always promoted women regardless of attitude or performance;'" and, (2) that another Pearson employee stated that "young women 'are easier to control and only give positive feedback.'" (Compl. ¶¶ 46–48.)
However, the Complaint contains no allegations that any Pearson employee made these statements to Baudean, in his presence, or in reference to him specifically. These statements appear to speak to a hostile work environment claim not before the Court. In any event, such statements, while insensitive, do not meet the demanding standard that Virginia courts require for an IIED claim. *Burke v. AT&T Tech. Servs. Co.*, 55 F. Supp. 2d 432, 441 (E.D. Va. 1999); *see also Perk v. Worden*, 475 F. Supp. 2d 565, 570 (E.D. Va. 2007) ("Virginia courts have held that '[i]nsensitive and demeaning conduct,' including verbal abuse, does not rise to the level of extreme or outrageous conduct required to state a claim for intentional infliction of emotional distress." (alteration in original) (citing *Harris*, 624 S.E.2d at 34)).

unacceptable" racial discrimination leading to demotion and termination did not constitute "atrocious" conduct to sustain a claim for IIED).

"Indeed, courts applying the Virginia rule have uniformly indicated that in the great majority of cases, employment discrimination will not meet this demanding standard." *Id.* (citing *Beardsley v. Isom*, 828 F. Supp. 397, 401 (E.D. Va. 1993) (finding that improper retaliation stemming from a report of sexual harassment did not support IIED claim); *Harris v. Norfolk & W. Ry. Co.*, 720 F. Supp. 567, 568 (W.D. Va. 1989) (finding that allegedly discriminatory demotion did not satisfy Virginia standard for IIED)); *see Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 982 (E.D. Va. 2012) (finding teacher's claim of wrongful discharge insufficiently "atrocious" or beyond bounds of decency to survive a motion to dismiss when teacher took leave for brain tumor surgery and employer then branded employee a "problem," criticized her performance, and otherwise treated employee negatively); *Musselman v. Merck & Co.*, No. 1:06cv845, 2006 WL 2645174, at *5–6 (E.D. Va. Sept. 13, 2006) (finding employer's conduct, culminating in termination, insufficiently atrocious or beyond bounds of decency to survive a motion to dismiss in case where employee repeatedly took medical leave and eventually was diagnosed as bipolar); *see also Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219–20 (4th Cir. 2015) (allegations that plaintiff was "labeled a poor performer and impliedly called a pedophile — while unsettling, are nonetheless insufficient as a matter of law to establish 'outrageous and intolerable' conduct" (citing *Womack*, 210 S.E.2d at 148)).

Because Baudean does not plausibly allege outrageous and intolerable behavior to sustain his IIED claim, the Court DISMISSES Count III.[17] *Burke*, 55 F. Supp. 2d at 441.

---

[17] Because Baudean's allegations fail to survive a motion to dismiss regarding the second element of an IIED claim, the Court need not assess any other element before it. *See supra* note 15.

### 3. Virginia Law Governs Any Breach of Contract Claim

Count V alleges breach of contract. Generally, where a cause of action arises in contract in Virginia, the law of the place where the contract is made governs questions regarding the nature, validity, and interpretation of a contract.[18] *Hunter Innovations Co.*, 753 F. Supp. 2d at 602 (citing *Lexie v. State Farm Mut. Auto. Ins. Co.*, 469 S.E.2d 61, 63 (Va. 1996)). However, when "a contract is made in one jurisdiction but performed in another, the law of the place of performance governs the contract." *Id.* at 603 (citing *Erie Ins. Exch. v. Shapiro*, 450 S.E.2d 144, 145 (Va. 1994)). "A contract breach is a performance issue and thus, is regulated by the law of the place of performance." *Thomaz v. It's My Party, Inc.*, No. 1:13cv00009, 2013 WL 1450803, at *5 (E.D. Va. Apr. 9, 2013).

Baudean plainly alleges that the performance of any employment contract occurred in Virginia.[19] The Court can see only one, relatively implausible, basis for Baudean claiming that New Jersey law applies: an apparent attempt to establish that a "new" contract was "made" via the July 2013 Email sent by the Pearson CEO when it is read alongside the Policy Manual of this New Jersey-headquartered business.[20] Even reading all inferences in Baudean's favor, this does

---

[18] "[I]n Virginia, a contract is made at the place where the final act is done which is necessary to make the contract binding." *Hunter Innovations Co. v. Travelers Indem. Co. of Conn.*, 753 F. Supp. 2d 597, 602 (E.D. Va. 2010) (citation omitted) (internal quotation marks omitted).

[19] "Baudean resides in the County of Hanover, Virginia," and "Pearson operates out of the home offices of their [sic] employees." (Compl. 2.)

[20] Baudean contends only that the *North American* headquarters of this growing "globally connected education company" resides in New Jersey. (Compl. 2; July 2013 Email 1.) The July 2013 Email from CEO John Fallon references Pearson's global aspirations, but nothing in that missive suggests a New Jersey origin – indeed the spellings used are common in places other than the United States. (July 2013 Email 1.) *See Thomaz*, 2013 WL 1450803, at *5 (discussing effect on choice of law issue when uncertainty exists as to where "the last act necessary for a binding contract took place"). Inferences about whether the July 2013 Email came from New Jersey

12

not end the analysis. The place of performance, and Virginia law, govern the allegations in Count V for breach of contract.

### 4. The Complaint Lacks Plausible Factual Allegations of the Existence of a Legally Enforceable Obligation Sufficient for a Breach of Contract Claim

Even presuming that, as Baudean alleges, the Policy Manual and July 2013 Email constitute a written agreement, the Court dismisses Count V because the Complaint fails to contain plausible factual allegations that a legally enforceable obligation between Pearson and Baudean existed, that is, a contract eliminating at-will employment for Baudean. Essentially, Baudean alleges that the Policy Manual, which expressly provides that Pearson employees are "at-will employee[s]," permits Pearson to "specifically agree[ ] otherwise in a separate written document signed by the CEO of Pearson Education or someone authorized by the CEO." (Policy Manual 1.) According to Baudean, the July 2013 Email constitutes the "written document" referenced in the Policy Manual that changed Baudean's status from an at-will employee to one with guaranteed, continued employment. Baudean contends that Pearson breached that written contract. (Compl. ¶¶ 93, 100.)

---

pertain only to the plausibility of Baudean's allegations about contract formation, however. The overriding factor remains that, no matter from where the July 13 Email and the Policy Manual emanated, this Court could not find that Baudean performed his employment anywhere other than Virginia.
    Finally, even were this Court to entertain the notion that Baudean had sufficiently pled facts that raised a dispute as to the existence of a contract, when Virginia is the intended place of performance, Virginia law would apply to that examination as well. *Id.* at *4–5 (applying Virginia law to dispute regarding whether contract existed when the intended place of performance was Virginia).

To state a claim for breach of contract under Virginia law, a plaintiff must first plausibly allege a legally enforceable obligation of a defendant to a plaintiff.[21] *Filak*, 594 S.E.2d at 614. "A legally enforceable obligation is shown by establishing an offer, acceptance, and valuable consideration." *Dutan v. Sheet Metal Remodeling, LLC*, 48 F. Supp. 3d 860, 870 (E.D. Va. 2014) (citation omitted). For a contract to be a legally enforceable obligation, "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances." *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981). "Each party must exchange[ ] promises in which each must be bound to act or refrain from acting." *Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*, No. 3:11cv630, 2012 WL 2905110, at *4 (E.D. Va. July 16, 2012) (alteration in original) (citation omitted) (internal quotation marks omitted). "Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Persinger & Co. v. Larrowe*, 477 S.E.2d 506, 509 (Va. 1996) (citation omitted).

The Complaint lacks factual allegations to plausibly demonstrate the existence of a legally enforceable obligation on the part of Pearson to Baudean. No plausible factual allegations exist to suggest the mutual assent of Pearson and Baudean to the elimination of at-will employment for Baudean. By its own terms, the July 2013 Email to all of Fallon's "colleagues" at Pearson expressly indicates that even some talented and valued employees would not continue working at Pearson once the company completed the reorganization process. (*See* July 2013 Email 3 ("As a result of this process, some talented and valued colleagues, who have served the company with great distinction won't, by the end of this year, have roles in Pearson.").) Nothing in the July

---

[21] In addition to alleging a legally enforceable obligation, a plaintiff must also allege the defendant's violation or breach of the obligation and an injury or harm caused by the defendant's breach. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). These elements are not at issue in this case because the Complaint fails to allege the existence of a legally enforceable obligation.

14

2013 Email plausibly constitutes a specific waiver of Baudean's at-will status regarding his continued employment, even reading the Policy Manual alongside the July 2013 Email.[22]

Here, Baudean places before the Court a "contract" with terms plainly contemplating that even valued employees, which Baudean alleges he is, will be released from employment. The Complaint fails to plausibly allege a contract between Baudean and Pearson waiving Baudean's at-will employment. Therefore, the Court DISMISSES Count V. *Cf. Va. Power Energy Mktg., Inc.*, 2012 WL 2905110, at *10 (finding on summary judgment that claim for breach of contract "fails as a matter of law for lack of its predicate: a contract").

### B. The Inartfully Pled Count IV Fails to Survive Rule 12(b)(6) Scrutiny and Will Be Dismissed

In Count IV, Baudean claims "wrongful termination," a tort, on grounds of "breach of an implied contract," a contract. Baudean and Pearson agree that Virginia does not recognize a cause of action for wrongful termination based on breach of an implied contract. (Opp'n 5; Def.'s Mem. Supp. 12.) Baudean explains this inartful pleading by stating that he brings a "claim of wrongful termination based on an implied contract . . . based on New Jersey law." (Opp'n 5.) While the Court likely could grant the motion to dismiss for failure to identify any Virginia cause of action, the Court will conduct a brief analysis as to the viability of a Virginia-based wrongful termination claim and a Virginia-based breach of implied contract claim. In the Court's view, Baudean's Count IV alleges facts which more readily fall within the

---

[22] Arguably, Baudean could contend that the July 2013 Email created a "new" agreement or contract that Pearson would not ask current employees to apply for their own jobs when the roles in the new organization were the same or broadly the same as they were as of the July 2013 Email. (July 2013 Email 3.) However, Baudean never had to reapply when his job title changed. Nor does he allege he was required to reapply when he was let go. As such, even if a "new" provision existed, Baudean does not allege a breach.

ambit of a wrongful termination claim than a breach of implied contract claim. In any event, neither claim could survive.

### 1. Virginia Law Governs Count IV, Which Appears to Allege Wrongful Termination More than Breach of Implied Contract

While Count IV alleges both tort and contract-based wrongs, the facts undergirding the claim pertain more readily to a tort framework. As found above in Parts III.A, III.A.1, and III.A.3, Baudean cannot proceed under New Jersey law as he seeks to do: Virginia law governs both the tort and contract causes of action. The Court will address any potential tort claim under a so-called *Bowman* analysis first, and will turn to the contract aspect of Count IV afterward.

### 2. The Complaint Lacks Plausible Factual Allegations to Sustain a *Bowman* Claim of Wrongful Termination in Violation of Virginia Law

Virginia law permits a tort cause of action for wrongful termination in violation of Virginia's public policy, known as a *Bowman* claim.[23] However, Baudean cannot sustain a *Bowman* claim in this case.

"Virginia is an at-will employment jurisdiction, meaning that an employee may be terminated at any time . . . ." *Lester v. TMG, Inc.*, 896 F. Supp. 2d 482, 487 (E.D. Va. 2012) (citing *Dray v. New Mkt. Poultry Prods.*, 518 S.E.2d 312, 313 (Va. 1999)). However, Virginia courts recognize a narrow exception creating a common law cause of action in tort for "a wrongful discharge claim if the 'termination violates Virginia's public policy,' which is known as the

---

[23] In *Bowman*, the Supreme Court of Virginia recognized a cause of action for improper discharge when two bookkeepers alleged that a bank board terminated their employment in retaliation for exercising their stockholder rights when voicing opposition to a board-supported merger. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 800–01 (Va. 1985). The Supreme Court of Virginia held that the interference with shareholder rights violated public policy expressed in § 13.1-32 of the Code of Virginia, which allows shareholders to vote free of duress or intimidation by corporate management. *Bowman*, 332 S.E.2d at 801.

16

'*Bowman* exception.'" *Id.* (quoting *Wells v. G.R. Assocs., Inc.*, No. Civ. A. 00-1408-A, 2000 WL 33199263, at *2 (E.D. Va. Nov. 22, 2000)).

"[A] plaintiff attempting to assert a '*Bowman* claim' must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Williams v. Va., State Bd. of Elections*, No. 3:11cv863, 2012 WL 2878579, at *8 (E.D. Va. July 13, 2012) (citations omitted). Baudean never alleges in the Complaint or his response to Pearson's Motion to Dismiss the Virginia statute that Pearson violated when it terminated his employment.

Because Virginia law applies, Baudean's failure to place a Virginia statute before the Court warrants dismissal. Baudean has not "give[n] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (second alteration in original) (citation omitted) (internal quotation marks omitted). Any wrongful termination tort alleged in Count IV is DISMISSED.

### 3. The Complaint Lacks Plausible Factual and Legal Allegations to Sustain a Claim of Breach of Implied Contract Under Virginia Law

The Court, despite noting that Baudean's Complaint does not suggest that a breach of implied contract drives his case, next addresses the viability of any breach of implied contract claim alleged in Count IV. In short, Baudean's Complaint is bereft of facts or legal contentions that could sustain *any* claim for breach of implied contract under Virginia law, which governs this case. But the Court reviews the Complaint favorably, and Baudean repeatedly invokes a "breach of implied contract," an extant cause of action in Virginia. For the reasons stated below, Baudean cannot sustain a breach of implied contract claim, either factually or legally.

First, Baudean appears to rely on a theory that a *written* contract exists, so the Court cannot perceive a means by which he could assert a breach of *implied* contract claim. *See Wood v. Symantec Corp.*, 872 F. Supp. 2d 476, 485 (E.D. Va. 2012) ("Because [a written agreement]

controls, [the plaintiff] cannot advance an implied contract theory contrary to the terms of the express contract."). At base, Baudean alleges that the "separate written document" of Fallon's July 2013 Email, when read alongside the Policy Manual, "formed a contract" that promised Baudean continued employment and waived his at-will status. (Opp'n 6.) These facts undergird his charge of breach of contract in Count V, not an implied breach as alleged in Count IV.

Second, even viewing favorably his Complaint with an eye toward Virginia-based theories for breach of implied contract does not allow Baudean to sustain an implied contract claim in Count IV. For instance, such causes of action could include a breach of contract implied in fact, often called "quantum meruit," or a breach of contract implied in law, sometimes called "unjust enrichment."[24] *Seagram*, 2014 WL 5341399, at *7. "Although each term is technically a distinct cause of action, the desired result of both is the same—that the plaintiff who provided a benefit or service to the defendant receives compensation for that benefit or service." *Id.* A claim for unjust enrichment (an implied in law contract) and quantum meruit (an implied in fact contract) require that the plaintiff allege the same elements. *Id.* at *8 (citation omitted).

The Complaint does not contain any plausible facts to sufficiently allege a claim for breach of an implied contract, unjust enrichment, or quantum meruit. All facts pertain to the written contract alleged. Even more devastating to Baudean's claim, however, is the Court's inability to discern the legal theory of contract under which Count IV proceeds. Therefore, the Court cannot

---

[24] Virginia courts use these terms interchangeably. *Seagram v. David's Towing & Recovery, Inc.*, --- F. Supp. 3d ---, No. 3:14cv414, 2014 WL 5341399, at *7 (E.D. Va. 2014). "Quantum meruit recovery is based upon an implied [in fact] contract to pay the reasonable value of services rendered." *Id.* (alteration in original) (citation omitted) (internal quotation marks omitted). "An implied in fact contract is one implied from the conduct of the parties." *Id.* (citation omitted). "On the other hand, unjust enrichment is based on a contract implied in law." *Id.* (citation omitted).

"draw the reasonable inference that [Pearson] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Count IV lacks the plausible factual allegations necessary for this Court to find that Pearson breached an implied contract with Baudean, or any facts suggesting the legal basis under which Baudean pleads. Any implied contract claim asserted in Count IV is DISMISSED.

### 4. Any Claim in Count IV Fails to State a Claim for Relief

Thus, the Court DISMISSES Count IV for failing to state a claim for relief under Virginia law. Any *Bowman* claim for wrongful termination in violation of Virginia's public policy in Count IV fails because Baudean omits reference to a Virginia statute that Pearson violated when it terminated his employment. Any claim for breach of an implied contract, quantum meruit, or unjust enrichment founders because Baudean did not allege plausible facts to support such a claim, and his legal references to those theories are cursory at best. Indeed, blending tort and contract concepts in Count IV does not give Pearson "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (omission in original) (quoting *Conley*, 355 U.S. at 47).

### IV. Conclusion

For the foregoing reasons, the Court grants Pearson's Motion to Dismiss. (ECF No. 7.) An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date 6/11/15